Case number 19-3250, Sarah Lee v. Ohio Education Association et al., argument not to exceed 15 minutes per side. Mr. Mitchell, you may proceed for the appellant. Good morning. Good morning. Jonathan Mitchell for appellant. Sarah Lee, I'd like to reserve five minutes. All right. Property that has been taken in violation of another's constitutional rights must be returned, even if the defendant took the property in good faith, and even if the defendant took the property in reliance on a statute or court ruling that purported to authorize its unconstitutional conduct. This court can assume the existence of a good can assume for the sake of argument that private defendants can assert a defense that resembles qualified immunity in Section 1983 litigation, consistent with court rulings that have allowed a good faith defense to be asserted under Section 1983. But none of that is any help to the union in this case, because neither qualified immunity nor good faith will ever allow a defendant to keep money or property that it took from a plaintiff in violation of the plaintiff's constitutional rights. Good faith can provide a shield from liability for damages, but it can never protect a defendant from a restitutionary remedy. I mean, you make that blank statement, but the Seventh Circuit has ruled in the contrary, right? The Seventh Circuit, with respect to that argument that we're making, either in that case or in this case, what the Seventh Circuit said was that the claim that we were asserting was not a claim for equitable relief. They held that it was a claim for damages. But our claim does not hinge, the success of our claim does not depend on whether we're seeking a legal remedy or an equitable remedy. What matters is that we're seeking restitution of property that was taken from our client in violation of our constitutional rights. There have been some courts that have said, whatever language you use, basically you're trying to do the same thing. Whether you call it damages or you call it restitution, you want money. We want a restoration of property that was taken in violation of constitutional rights. You want money. It is money, of course. There was money taken and you want money. Of course it's money. That's right. It is money. But it doesn't matter whether we call it legal relief or equitable relief. We look at how other courts have handled these situations, and it comes up frequently where money has been taken from someone in good faith, but later a statute is declared unconstitutional. The United States against Windsor is probably the most apt analogy, where the IRS for many years collected taxes in good faith reliance on the Defense of Marriage Act. Later, the Defense of Marriage Act was declared unconstitutional. The good faith of the IRS would, of course, shield the individual officers from liability for damages, but the government was still required to return the taxes that it collected in violation of the Constitution from Ms. Windsor. She's seeking a restitution of the money. Well, that was a limited amount of tax, though. You're asking for the, in effect, the unions to disgorge fees that they collected going back for everybody for who knows how many years. That doesn't seem analogous to me. Judge Daugherty, we're only seeking recovery of fees within the statute of limitations. In the Windsor situation, people who were seeking refunds could only obtain refunds within the three-year statute of limitations that is allowed for tax refund claims. No one's proposing either in Windsor. What is the statute of limitations in this case? I believe it's two years. It would be borrowed from state law because this is a 1983 action. I believe the statute of limitations is two years. Another analogous case is the search of Congressman Jefferson's office where the FBI agents relied on a search warrant in good faith, but the search warrant was later declared unconstitutional. Now, the reliance on that search warrant would immunize the agents from any liability for money damages, but the FBI was still required to return the property that it seized from Once again, the distinction here is between lawsuits that are trying to recover compensatory damages versus a lawsuit that merely seeks the return of property that never should have been taken in the first place, even though the property was taken in good faith. And Wyatt against Cole, one of the Fifth Circuit decisions that relies on the good faith defense, the defendants had seized property in reliance on a state replevant statute that was later held to be unconstitutional. The Fifth Circuit held that the good faith reliance on that replevant statute would protect the defendants from money damages, but the defendants still had to return the cattle and the tractor that they had seized in reliance on the replevant statute, but in violation of the plaintiff's constitutional rights. Good faith never allows a defendant to receive a windfall by keeping the property that he Your client, under the arrangement to pay these fair share fees, didn't have to pay for collective bargaining representation. The money she paid purportedly went to other things of a non-collective bargaining nature. And I understand your client would consider whatever it went to to constitute a compelled speech, but it wasn't as though she didn't get anything at all for the money. You wouldn't make that argument? No. We wouldn't make that claim. She may very well have received some type of benefit on account of the union's collective bargaining activities. We're not denying that possibility, Judge Clay. But we don't think that's relevant to our claim for recovery because of Janus. Janus holds that even though there may be a conceivable benefit conferred on the unwilling payers of the union, that does not allow either the state or the union to require the non-members to contribute financially to support what the union did. And because the holding of Janus is retroactive, because Harper against Virginia Department of Revenue says that any pronouncement of the Supreme Court will be retroactive, if – I think that's the general rule. I think there are some exceptions. I mean, there are few and far between. But I question whether this is a type of case that should be given just prospective application. I think there's language in the Supreme Court opinion that talks about, from here on out, we will no longer allow the unions to extract money from their members. There's language in there. It talks about future actions in it. And also, it just doesn't make any sense when the Supreme Court overturns their own precedent, which is a little bit of a distinction between the statutes that you cited as analogous and also the search warrant cases. But when the law of the Constitution is actually overturned by the Supreme Court overruling their prior precedent, I don't think retroactivity, the policy behind it, makes any sense. And I see it as an open question. The Seventh Circuit ducked the issue in the Janus remand case, but it doesn't mean we have to duck it. Well, there was a time, Judge Griffin, when the retroactivity inquiry was more contextualized in the 1970s, when the Supreme Court applied this Chevron oil test to determine whether a new Supreme Court pronouncement would be made retroactive. And they looked at three different factors. Harper clearly rejects that previous Chevron oil regime, and it purports to be adopting a rule that says that any pronouncement of the Supreme Court will be retroactive so long as the Supreme Court is applying the constitutional holding to the parties before it in that case. And the Court clearly applied its constitutional holding to Mr. Janus. There's another example, though, of very recent vintage that I think is analogous here. Obergefell against Hodges overruled a prior precedent. Baker against Nelson, when it established the constitutional right to same-sex marriage. All the courts have held that Obergefell is retroactive, or at least every court opinion of which I'm aware. And there haven't been that many, maybe four or five. I don't have the cites with me. There weren't damage claims involved in those, right? No, none of those cases, that's correct. I mean, I think the damage claims might be distinguishable, but I know it's a tough issue. That's why the Seventh Circuit ducked it, I think. And there's still the qualified immunity defense that is available, even when the decision is made retroactive. There can be other defenses. Statute of limitations is one defense that we mentioned earlier. Well, the good faith defense that I'm still not quite sure why you think this is distinguishable from... Did you argue the Seventh Circuit? Yes. Okay, I thought you did. So you're saying that this is different from the Seventh Circuit case in what way? Well, there's no difference, really, between the legal arguments. It's a case, isn't it? There's no difference in the legal arguments that we're making. But in response to the Seventh Circuit's panel opinion, which admittedly went against us, they didn't answer the argument that we're making with respect to the restitutionary nature of the remedy that we're seeking. What we're saying is that previous cases that have recognized a good faith defense have all involved efforts to collect... And I see I'm into my rebuttal time. May I continue? Yeah, unless you want to take some time from your rebuttal time. Oh, may I answer this question and then stop? Briefly, very briefly. So the claim that we're making both before this Court and also before the Seventh Circuit is that good faith does not provide a defense when a plaintiff is seeking restitution of money or property that was taken in violation of their constitutional rights. So were you seeking restitution in the Seventh Circuit case? We were. We were seeking the same restitution we were seeking before this Court. So why didn't that resolve the issue? Because what the Seventh Circuit said in their opinion was that we're not seeking equitable relief. That was their holding. But that's not what our claim hinges on. We're not saying that we have to show that this is an equitable claim in order to prevail. No, they said it's not entitled to the damages that you sought. Whether you call it restitution or whether you call it whatever you call it, you're not entitled to money damages. That's what they said. They said the good faith defense blocks us from getting damages. Counsel, we're going to have to take time from your rebuttal time if you want to continue. I'd like to reserve time and I'll address further on rebuttal. Thank you. Thank you. Good morning. May it please the Court. There's a reason why there is such an extraordinarily broad consensus among the Circuit and the District Courts going back 30 years actually to this Court's Duncan v. Peck decision and then continuing through the pair of Seventh Circuit cases that came down just last month for the proposition that private parties who invoke presumptively valid state laws are not subject to monetary damages remedies under Section 1983. I think the core reason is this, is that before the Supreme Court's 1982 decision in the Lugar case, it was an open question whether the Section 1983 Undercolor of State Law Clause even applied or was broad enough to reach private parties where the private party's only conduct was invoking a presumptively valid state statute to secure the assistance of state officials. And when the Court decided Lugar and held that 1983 covered that kind of private action, it immediately in the same breath said that it recognized the point that the dissent had made and agreed with dissent that there was a problem and a basic inequity could arise from application of Section 1983 to private parties in cases where the plaintiff is seeking damages. And the Court said this problem, which it conceded, should be dealt with not by changing the character of the 1983 cause of action, but by establishing an affirmative defense to damages liability. So the Court flagged the issue, then this Court in Duncan v. Peck took that statement to heart and it recognized a good faith defense to Section 1983 damages liability for private party defendants who rely on presumptively valid statutes. And the Duncan Court, this Court, did so based on the recognition that the prospect of holding innocent private parties liable for following presumptively valid laws doesn't just offend modern sensibilities. The Court said it's an injustice that the common law did not tolerate either. So because the Supreme Court has repeatedly said in interpreting Section 1983 that the statute shouldn't be read to have silently rejected basic common law principles, private parties relying on presumptively valid statutes should not be subject to damages liability under 1983, just as they weren't subject to such liability at common law. And Justice Kennedy in his concurrence in the later case of Wyatt v. Cole cited common law precedent for that point. So that's, I start with that even though it is conceded by my opponent that the good faith defense applies. But I think it's important to start with that foundation because once you realize that that's the foundation, there's no reason why it shouldn't apply and the Courts have not made the distinction counsel for the other side has made between whether something is, whether a monetary retrospective monetary award, you know, how it's technically labeled. So the real question is whether the good faith defense applies here, not whether there is a good faith defense. And there are two features of this case that make this the strongest possible candidate for application of the defense. And the first is that here the union was not simply relying on a presumptively valid state statute. It was relying on state law that had been tested in court, of course in the Abood case and found to be constitutional by the highest court in the land. So most of the good faith, in fact all of the good faith defense cases until the post Janus cases found the defense even where there wasn't a clear precedent, it was sufficient that there wasn't a ruling of invalidity. And then the second feature of this case that makes this one particularly strong was alluded to I think in one of Judge Clay's questions, which is that the unions collected the fees here for the purpose of benefiting all of the employees who it represented whether they were members or non-members. So the union had a statutory obligation to take these monies. The union didn't put them in a vault somewhere or, you know, sequester the funds. The union immediately, and it's undisputed, was spending the funds to provide services. And I think counsel very candidly acknowledged in his opening remarks here that services were provided to everyone, including non-members like the plaintiff. So those two features make this case actually stronger than the Duncan v. Peck case, which is, you know, this court's lead case. And there's a feature of Duncan that I think deserves more attention than it has been given in the briefs, and so I'd like to highlight that. And that is if you look at the facts of Duncan, what happened there is that the defendant, who is a gentleman named Peck, used an Ohio attachment statute that was later held to be unconstitutional. So he used that statute to, you know, get a government sheriff, you know, a government agent, to seize shares of stock that were owned by the plaintiff, Duncan. And he used the attachment statute in advance of serving a breach of contract complaint on Duncan. So he seized property, sort of shares of stock, as security for his contract action without notice under a statute that allowed that. After that attachment statute was declared unconstitutional, Duncan then sued under Section 1983, and sort of the plaintiffs and defendants reversed, and Duncan sued, seeking as a remedy only the return of the unconstitutionally seized shares of stock. And on those facts, this court held that Peck had a good faith defense and could keep the shares of stock. So I bring that up here because the sole argument has really been reduced now to this supposedly universal principle that unlike in all of the other cases where the nature of the wrong involves transfer of property, that there's no good faith defense. But the leading case, Duncan, is inconsistent with that theory, with the plaintiff's theory of how Section 1983 and the good faith defense work. On the plaintiff's theory, Peck would have had to return the stock, no questions asked. But the court's ruling meant that he could keep the stock. So I think that's really sufficient, I think, to respond to the plaintiff's argument. But the reality is that there are numerous decisions and authorities that are inconsistent with the plaintiff's sort of sweeping statement that without exception, until the recent round of union cases, there was always a return of money or property or restitutionary relief. And that's just not right. I mean, really, the theory is articulated in the plaintiff's briefs, and I think there's been a little bit of a switch of theory, with all respect to my adversary, since the Janus decision. The theory presented in both the Janus briefs and in this brief is that a plaintiff seeking the return of property or fees in this circumstance is bringing a claim in equity and not a claim that would be an action at law. And therefore, the argument was, you couldn't have either a good faith defense or a qualified immunity defense to an equitable action. That's the argument that was made. That's the argument that's made on page 14 of the opening brief here. The argument is that Ms. Lee is asserting an equitable claim for restitution of her fair share fees. And trying to distinguish all of the damages case on that basis. Well, you know, the truth is that this really is properly characterized as a damages claim. But at the end of the day, it really doesn't matter, because I think the defense would prevail under either theory. Why wouldn't good faith apply to equitable claims? It would apply. And in fact... It seems like an equitable doctrine as well. That's right. And it would apply. And we have... I will skip over... Yeah. If we were to rule for the plaintiffs in this case, would you agree we would create a conflict with the Seventh Circuit? If you were to rule for the plaintiffs? Absolutely. You would have to create a conflict. I mean, they try to distinguish this case from the Janus case on remand. Is there a distinction here? There is no distinction. This case is on all fours with Janus. We're always... I mean, we can create inter-circuit conflicts, but we're always reluctant to do it. Yeah. Is that one of your better arguments? Well, sure. I mean, obviously the Janus came down after all the briefing. We immediately alerted the court to it. And it's not just the Seventh Circuit case, but that would be the first intra-circuit. A lot of district court cases. Oh, I mean, tons of them. District court cases are not nearly as important. Sure. As creating a inter-circuit conflict. Yes. And we've done it before, but I could just tell you for one, I'm rather reluctant to have different rules in different circuits unless there's a really compelling interest to do it. I agree, and I think this would not be a circumstance where there should be a circuit split. And I do think you'd even risk creating an intra-circuit conflict given how the Duncan case unfolded. So, you know, I agree with that. I would also, I just do want to make a couple of additional points here. The first is when the question was about, well, isn't there a good defense in equitable cases? We cite these in our brief, but I just want to draw a little bit of attention again to the Supreme Court's decision in the Lemon II case. That's the second Lemon case. The first Lemon case had found it was a constitutional violation for the state of New York to provide funds to a religious school even to provide a secular program. Then the case came back to the court because the district court had said, well, the school couldn't even continue to receive payments for services already rendered. And then Justice Rehnquist wrote Lemon II, and he said there's no need to apply that remedy. Those funds can be expended because the private party relied in good faith on a presumptively valid New York statute. So we lay that out in our brief. The Ellis case, which is a union case, where one element, in that case the question was whether agency, this was in the Abood era, but even in the Abood era, of course, there were certain expenses that were not consistent with the First Amendment if the expense was not germane to collective bargaining. So there was an item in Ellis about, and this is also discussed in our briefs, about a death benefit program that the court said was of questionable validity and said, but we don't have to resolve the validity of that because it wouldn't be equitable to make the union refund those monies because the program that the union expended the monies for did provide a benefit even to the non-member objectors who had protested. So there's no universal principle against applying equity in these kinds of circumstances. The restatement third on restitution, which is obviously the definitive compilation of the common law in this area, has an illustration that we cite in our brief. It's illustration 17 to section 19. It involves the following fact pattern where the city assesses a property tax on a non-discriminatory basis. The tax is subsequently determined to be improperly authorized and invalid and void. And then the illustration says that if the revenues illegally collected were spent exclusively on ordinary municipal services benefiting taxpayers among other residents, the court may find that neither the city nor its residents have been unjustly enriched and therefore there's no restitutionary remedy in that case. So that illustration, Duncan, Lemon,  that there's some sort of universal rule in cases like this. And then I'll wrap up. I do want to address one of the arguments made in the amicus brief by amicus ogle. And that argument is that the good faith defense may be applied only when the underlying constitutional violation on which the 1983 action is predicated requires proof of malice or bad faith or some other kind of scienter. And the amicus's argument is that no scienter is necessary to show a First Amendment violation under Janus, therefore there should be no good faith defense. And that argument also does not line up with the cases. And in fact, the lead cases that recognize and allow a private good faith defense, including, again, this court's decision in Duncan, the Fifth Circuit's decision in Wyatt, and the other kind of leading circuit court cases, all of them, that first generation of cases, all involved procedural due process violations. And no showing of scienter is required to establish that kind of violation either. The Tenth Circuit said it well in the Dodd versus Richardson case, which we cite in our brief. The Tenth Circuit said procedural due process violations focus on the sufficiency of the procedural protections afforded the plaintiff, not the state of mind of the officials who establish or apply the policies. So the effort to treat a Janus violation as something that's distinguishable from those procedural due process violations at issue in the first generation of good faith cases fails. And that's just another important point to make. I want to answer questions if the court has any. But if not, I will yield my remaining few seconds here, I guess. Thank you very much. Thank you. Any rebuttal? Mr. Diane relied heavily on Duncan against Pack. But that case does not in any way undercut the argument that we're making. And if I may quote from the opinion briefly on page 1263, the court said at the very outset that Mr. Duncan was seeking to, quote, enjoin execution of the default judgment and seek damages for deprivation of his property interest in the stock. He was not asking for a return of the stock. He was seeking damages to compensate him for the deprivation of his property interest. He was paying not actual, you don't want the return of the dues. You want the equivalent of the money that you paid for the dues, right? Well, we want the money to be returned. And it doesn't have to be the same dollar bills. You want the equivalent of money that you paid. It's true. Money is fungible. But again, Ms. Windsor was seeking a refund of her taxes. And it may not have been the exact same dollar bills that she paid into the U.S. Treasury. But she did get the money back. And we also have cited cases in our briefs where criminal fines are paid often in reliance on the statute that is years later held to be unconstitutional. And courts have held uniformly that those fines have to be returned. So there isn't any case that we can find or that Mr. Diane has cited outside the context of public sector unions where money that has been taken in admitted good faith reliance on a statute that is later declared unconstitutional gets to be kept. The money or the property that's taken has to be returned even when the defendant has an immunity from damages. There's one other case of this court dealing with good faith, and that's Vector Research. And Vector Research involved an unconstitutional impoundment of property that was done in good faith reliance on a statute. The defendant was held immune from damages, but the impounded property was still returned. So, again, neither in Duncan v. Peck or in Vector Research is there any holding from this court saying that a defendant who takes property in good faith gets to keep it, even when he has an immunity from damages. Judge Griffin, you asked Mr. Diane whether good faith should apply to equitable claims. And there's a holding from this court in Dean v. Byerly, which we cite on page 9 of the reply brief, that says that qualified immunity is inapplicable to claims for equitable relief. So, although that's not a holding on the good faith defense, we can't see why there should be any different treatment between qualified immunity and good faith in that respect, especially when so much of the union's argument hinges on creating a defense of good faith that essentially resembles qualified immunity. Judge Griffin, you also asked about the issue of a circuit split. Would it create a circuit split to rule in my client's favor? And this case, there are two different Seventh Circuit cases, just to clarify Mr. Diane's response. There's Janus and there's Mooney. This case is, in our view, indistinguishable from Mooney. And we admit there is, however, a petition for en banc review pending. So it's not completely over yet in the Seventh Circuit. Mr. Diane said the case is also on all fours with Janus. And I respectfully disagree with that characterization, because Mr. Janus did not make before the Seventh Circuit the argument that we're trying to make, which is that claims that are seeking restitution of property that was taken in good faith are different from claims for damages. And I thought you told us that you did make that argument. In Mooney, that's correct. There are two different Seventh Circuit cases. I understand that, but I thought that the original case in the Seventh Circuit included both claims. Ms. Mooney's case in the Seventh Circuit included both claims. Mr. Janus's case did not. I don't represent Mr. Janus, so I represented Ms. Mooney. The two cases were heard together before the Seventh Circuit. So, again, I just wanted to clarify in response to Judge Griffin's question what the status is in those Seventh Circuit cases relative to this case. And if the court has further questions, I'm happy to answer them. But otherwise, we'll yield back our time to the court. Thank you. Thank you, judges.